UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EVARISTO SANTAMARIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-01539-GCS |
| | ) |
| WEXFORD HEALTH SOURCES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Evaristo Santamaria, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his original complaint (Doc. 1), Plaintiff alleges that on July 30, 2020, his bunk bed collapsed while he was on the top bunk and his cellmate was laying in the bottom bunk. When the bunk broke, Plaintiff fell to the concrete floor and sustained injuries to his right knee and shoulder. Plaintiff and his cellmate called for a med tech or a nurse to come to the cell. Sergeant John Doe and Officer Lawson arrived and ignored the requests for medical assistance. John Doe and Lawson placed Plaintiff and his cellmate in handcuffs and treated them as if they had done something wrong. Plaintiff continued to request medical help for his injuries, but he was denied medical care. He alleges that Wexford

deliberately understaffs the healthcare unit resulting in the denial of care and treatment for his medical needs. Plaintiff continues to suffer from pain. (Doc. 1).

On May 19, 2022, the Court conducted its preliminary review of the complaint. Plaintiff was permitted to proceed on an Eighth Amendment claim against John Doe and Lawson for denying him medical care and an Eighth Amendment claim against Wexford for maintaining policies that resulted in him being denied medical care. (Doc. 7). On February 8, 2023, the Court appointed counsel, Mark Brown, for Plaintiff, because Plaintiff could not speak or write English and because he only had an eighth-grade education. (Doc. 33, p. 6).

The Court gave Plaintiff leave to file an amended complaint. (Doc. 33, p. 7). Plaintiff, through counsel, filed an amended complaint on May 8, 2023. (Doc. 45). On May 10, 2023, the Court conducted a screening Order of the amended complaint and found that Plaintiff "articulated a colorable federal cause of action against Defendants Wexford, Wills, Siddiqui, Caldwell, Lawson, Crain, Jeffreys, and Nitzsche for constitutional violations and related state law claims." (Doc. 47).

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Caldwell, (Doc. 79, 80, 93), and a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Crain, Jeffreys, Lawson, Nitzsche, and Wills. (Doc. 87, 88, 100).[1]

---

[1] Defendants Wexford and Siddiqui did not file motions for summary judgment on the issue of exhaustion of administrative remedies.

Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing the present lawsuit because he did not file any grievances which address his claims against these Defendants pursuant to the procedures set forth in the Illinois Administrative Code. Plaintiff opposes the motions arguing, *inter alia,* that Defendants' failure to make the grievance procedures available in a meaningful way thwarted his attempt to use the grievance process. (Doc. 91, 92). On May 14, 2024, the Court held an evidentiary hearing on the motions, heard testimony from Plaintiff, and took the matter under advisement. (Doc. 109).[2] Based on the following, the Court **DENIES** the motions for summary judgment.

## FACTS[3]

During all relevant times, Plaintiff was an inmate in the IDOC and housed at Menard. Plaintiff claims his primary language is Spanish, and his ability to communicate in English is limited.

On May 8, 2023, Plaintiff filed his first amended complaint. Plaintiff's allegations stem from injuries he allegedly sustained on or about July 30, 2020, when the metal chain securing his top bunk broke. As a result, Plaintiff fell to the floor. Approximately three days later, Plaintiff alleges he underwent x-rays of his body, but he did not receive

---

[2] Interpreter Fernando Torres translated the proceedings for Plaintiff.

[3] The Court will only discuss the three grievances addressed during the hearing on May 14, 2024: grievance dated July 30, 2020 (#15-8-20), grievance dated April 8, 2021, and grievance dated June 20, 2021 (#215-6-21).

treatment for the pain he was experiencing in his shoulder, back, hand, right knee, and right leg. Plaintiff further claims he was not treated for over one year.

On July 30, 2020, Plaintiff filed an emergency grievance #15-8-20 marked "medical treatment" and "other - chain of top bunk broke, and I fell out of bunk." This grievance does not name Defendants. Plaintiff states that he fell and injured his right leg, hip, right shoulder, and hand. Further, Plaintiff states: "I wanted them to take me to the Health Care Unit but they said they couldn't and that a Med tec would come and look at me, the Med Tec said I would see the Doctor on Monday! . . . I can not speak good English, therefore, I am having my Cell Mate (McCallister B23693) write this for me, and because he was here when all this happened." In the relief requested, Plaintiff asked for x-rays, pain meds, and a brace for his leg. (Doc. 83-3, p. 35-45). The Chief Administrative Officer ("CAO") deemed this an emergency on August 8, 2020. The grievance officer responded that the grievance was moot on October 21, 2020, and the CAO concurred with this recommendation on October 23, 2020. The Administrative Review Board ("ARB") received the grievance on September 30, 2021, and the ARB returned the grievance as untimely noting it would not be addressed as it was received 30 days after the CAO's decision. (Doc. 88-3, p. 32-38).

On April 8, 2021, Plaintiff filed a grievance marked "medical treatment" complaining about pain he was experiencing in his right shoulder and knee on March 14, 2021, which stemmed from the incident on July 30, 2020. Also contained in this grievance, Plaintiff stated he needed a Spanish translator to communicate with medical staff.

Page **4** of **14**

Specifically, Plaintiff's grievance states: "[t]o be clear I am a Spanish speaking person; I am not bilingual - therefor it is important that I have access to an interpreter! Nothing is more important than having my medical issues explained to me in my native language!" The relief requested states: "[i]t is imperative that I have access to a Spanish speaking interpreter, in order for me to explain what my medical issues are. Nothing is more important to me than that! By not allowing me to have my medical issues conveyed to me in Spanish is a direct indifference to my rights. By not doing so allows the staff to assume that my ailments are psychosomatic when in fact they are not!" (Doc. 88-3, p. 42). Defendants were not named in this grievance. The ARB received the grievance on September 30, 2021, and the ARB returned the grievance without further review on October 1, 2021. The ARB requested Plaintiff provide the original grievance, including the counselor's response, and a copy of the grievance response from the Grievance Officer and the CAO, if timely. The ARB also indicted that medical issues are to be reviewed at the current facility prior to review by the ARB, and the documentation submitted failed to follow the procedures set forth in DR 504. (Doc. 88-3, p. 39-45).

Next, Plaintiff filed a grievance #215-6-21 on June 20, 2021, regarding lack of medical treatment from July 30, 2020. Plaintiff requested the following relief: "[m]edical treatment for injuries caused by Menard Correctional Center's broke bunk." This grievance names the following individuals: N.P. Zimmer, Dr. Siddiqui, Dr. Ritz, and Nurse Crain. The grievance officer denied the grievance on October 18, 2021, and the CAO concurred that same day. The ARB received the grievance on November 5, 2021.

On November 16, 2021, the ARB retuned the grievance without further review on the merits as untimely and duplicative of a grievance addressed by the ARB on October 5, 2021. (Doc. 88-3, p. 27-31).

In his First Amended Complaint, Plaintiff claims that Defendants Lawson and Nitzsche were deliberately indifferent to his medical needs by failing to obtain medical care for him after the bunk detached from the wall; he also alleges state law intentional infliction of emotional distress claims against them. Plaintiff further alleges that Defendant Crain was deliberately indifferent to his medical needs by failing to respond to his request for medical treatment; that Defendant Caldwell was deliberately indifferent to his medical needs when he denied his request for a more effective pain medication and failed to consider alternative medications; that Defendant Wills was deliberately indifferent to his medical needs for failing to hire sufficient medical staff and for failing to address deficiencies in the nurse sick call protocol; and that Defendant Jeffreys was deliberately indifferent to his medical needs for failing to ensure inmates receive necessary medical treatment and for failing to address deficiencies in the nurse sick call protocol. (Doc. 45).

During the hearing on May 14, 2024, Plaintiff testified through an interpreter that he is not able to understand English either orally or written. Further, Plaintiff testified that when he arrived at Menard, he was not given a Spanish orientation manual regarding the exhaustion of administrative procedures. He also never signed a document indicating that he received a Spanish orientation manual. He also testified that he

repeatedly requested a Spanish manual from prison staff, but he was never given one. He further averred that no one from the prison ever told him of the deadlines/appeal times for filing grievances, that no one from the prison told him who he had to identify in his grievances, and that another inmate helped him prepare his grievances.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*,

286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining
> that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

As an inmate confined in the Illinois Department of Corrections ("IDOC"), Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures

specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## DISCUSSION

Defendants maintain that the record reflects that Plaintiff did not properly exhaust his administrative remedies as to the allegations against them. Plaintiff opposes the motions contending, *inter alia*, that the grievance process at Menard was unavailable to Plaintiff. The Court agrees with Plaintiff.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds Defendants have not met their burden. Plaintiff has an eighth-grade education and is unable to read or write in English. Thus, he would not have been able to read the

grievance procedures, even if they had been provided to him in English. A remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016)). In *Ross*, the Supreme Court provided examples of situations in which administrative remedies are unavailable: when prison officials are "consistently unwilling to provide any relief to aggrieved inmates," when the "administrative scheme [is] so opaque it becomes, practically speaking, incapable of use," or when "prison officials thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859–60. Unavailability does not necessarily have to be caused by the misconduct of the defendants. A process can be unavailable where an "inmate, through no fault of his own, could not [access] the grievance process." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). "The 'unavailable' exception is meant to be narrow." *Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022) (citing *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022)). It is also a fact-specific inquiry. *See Lanaghan*, 902 F.3d at 688.

The Seventh Circuit has noted that administrative "remedies are available only if a prisoner has been notified of their existence," and if the existing remedial processes are "communicated in a way reasonably likely to be understood." *Ramirez*, 906 F.3d at 535. "That analysis must also account for individual capabilities." *Id*. An inmate's language barrier may mean that the prison's administrative remedies are unavailable because the process was not communicated in a way reasonably likely to be understood. In *Ramirez*,

"no one at [the prison] ever remedied the failure to communicate the grievance process to [the plaintiff] despite widely shared knowledge of his lack of English proficiency," and the "record show[ed] that nothing gave [the plaintiff] even a clue about the grievance process." *Id.* at 536–537. In addition, the prison's orientation and manual were presented only in English, but Ramirez's English-language skills were so limited that he could not comprehend the oral presentation or the written materials. *Id.* at 534-535. As a result, the Seventh Circuit concluded that administrative remedies were not available to the plaintiff. *Id.* at 538.

Furthermore, the Seventh Circuit remanded a case for an evidentiary hearing to determine if a plaintiff with a low IQ score and a lack of understanding of the grievance process made exhaustion unavailable. *See, e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023) (noting plaintiff never successfully completed the grievance process despite twenty-one tries). In *Smallwood*, the Seventh Circuit noted that "when a prisoner's ignorance of the process is not within his control – that is, because he has not been informed of the process" either due to misconduct of the prison or due to his own personal circumstances, the process is unavailable. *Id.* at 315.

Like *Ramirez*, Plaintiff testified that the specifics of the grievance procedures were never communicated to him in a way that he could understand what was required of him. Plaintiff is not able to understand either spoken or written English. Plaintiff testified that when he arrived at Menard, he was not given a Spanish orientation manual regarding the exhaustion of administrative procedures and that he never signed a

document indicating that he received a Spanish orientation manual. He also testified that he requested but never received a Spanish manual and that another inmate had assisted him in preparing his grievances. Plaintiff further indicated that he had no idea if his grievances were correct or not.

Defendants offered the declaration of Kelly Pierce, grievance officer, and Plaintiff's Cumulative Counseling Summary to demonstrate that Plaintiff was aware of the grievance process at Menard. Specifically, Pierce declares in part:

> When individuals in custody are transferred to Menard Correctional Center, they are provided an orientation manual, which outlines many of the policies and procedures at Menard, including but not limited to the grievance process. If an individual in custody is primarily Spanish-speaking with limited understanding of English language, they are issued an orientation manual in Spanish.
>
> . . . Grievance forms are available in both English and Spanish.
>
> If an individual in custody submits a grievance written in Spanish, there are designated individuals, who are employed by the Illinois Department of Corrections in various capacities, who translate those grievances into English.
>
> . . .

(Doc. 100-1, p. 1-2).

The Cumulative Counseling Summary reads in part:

> 5/6/2019 08:59:19 *Offender participated in Orientation process and was provided with the Orientation Manual. Issued Orientation Manual in Spanish to Offenders with poor English skills. Offenders signed for manuals. Offender Pre-Release Identification Checklist initiated. Provided Telephone Pin # form and Visiting List form and explained procedures. All Offenders were informed of House Bill 569 and explained process for application. PREA procedures discussed during orientation.*

(Doc. 100-3, p. 6).

Ms. Pierce's declaration indicates what information is supposed to be given to inmates at orientation and that Spanish grievance forms are available to inmates. Her declaration, however, does not explicitly state that Plaintiff received the Spanish manual or received the Spanish grievance forms. Similarly, Plaintiff's Cumulative Counseling Summary lacks exact information as to Plaintiff as it can be read to be applied generally to Spanish speaking inmates. In fact, Defendants did not provide Plaintiff's signed form indicting that he received the Spanish Manual. Ms. Pierce's declaration and Plaintiff's Cumulative Counseling Summary notes simply do not rebut Plaintiff's testimony that he did not receive adequate information about the grievance process. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have not carried their burden regarding exhaustion. Thus, the Court finds that the grievance process was unavailable to Plaintiff, and the Court need not address Defendants' other arguments pertaining to exhaustion.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motions for summary judgment on the issue of exhaustion (Doc 79, 87).

**IT IS SO ORDERED.**

**DATED: May 31, 2024.**

Digitally signed by Judge Sison
Date: 2024.05.31 13:41:49 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**